## RALPH *v.* UNITED STATES.

*(Circuit Court, N. D. Illinois. December 5, 1881.)*

1. CRIMES—PERJURY—MATCH-STAMP BOND—AFFIDAVIT OF SURETY.

The affidavit required by the regulations of the treasury department to be made by a surety upon an ordinary match-stamp bond, to secure the payment due to the United States for internal revenue stamps to be delivered on credit to a manufacturer of matches, setting forth the pecuniary responsibility of the surety, is an instrument authorized by law ; and if statements made therein as to his pecuniary responsibility are false to his knowledge, the surety is guilty of perjury.

On Error to the District Court.

*Bisbee & Ahrens*, for plaintiff in error.

*J. B. Leake*, Dist. Atty., for the United States.

DRUMMOND, C. J., *(orally.)* Under the provisions of the internal revenue laws of the United States, one Phineas Ayer, in December, 1878, procured a bond with sureties in the sum of $30,000, being an ordinary match-stamp bond, in the form then required by the commissioner of internal revenue, to secure the payment due to the United States for certain internal revenue stamps, to be delivered to Ayer on credit as a manufacturer of matches. As a necessary condition to the acceptance of this bond and of the sureties, the regulations of the treasury department required that an affidavit of the surety should be made before some officer qualified to administer an oath, signed by the surety, and setting forth his pecuniary responsibility. Such an affidavit was signed by the plaintiff in error and by his wife, Matilda S. Ralph in this case, before a proper officer. The indictment charges that the plaintiff in error procured his wife to sign the affidavit, and that she committed perjury in signing it. Before the

district attorney approved the bond he examined the plaintiff in error and his wife particularly in regard to their property, real and personal. After the bond was executed and the affidavit was sworn to and signed, it was approved by the district attorney of the United States, and was subsequently accepted by the proper officer of the treasury, and revenue stamps to a large amount were issued to Ayer. On the trial of the case before the district court the affidavit was offered in evidence, and objection was made on the ground that it was not an instrument required by law to be sworn to, and that therefore a false statement contained therein did not constitute perjury. This objection was overruled by the court, to which exception was taken. It was also shown that the plaintiff in error admitted that he was not pecuniarily responsible, but that his wife was responsible as surety, they both having signed the bond. There was evidence also offered tending to show that the statement set forth in the affidavit sworn to by the wife of the plaintiff in error was false as to the value of the real property therein described and as to the title thereto. The plaintiff in error admitted on the trial, by his counsel, that he procured his wife to sign the bond, and that he was responsible for whatever she had done, but denied that she had committed perjury. The counsel of the plaintiff in error, addressing the court, said, in his presence and hearing, "The defendant consents that a verdict of guilty may be rendered by the jury," and the court thereupon said, "Does the defendant so consent?" No objection was made, and the plaintiff in error nodded his head in reply to the question of the court, and a verdict of guilty was then directed to be rendered by the jury, which was accordingly done in the presence and hearing of the plaintiff in error, without objection or dissent by him.

After the recording of the verdict, a motion was made by the plaintiff in error for a new trial, and several affidavits were filed in support thereof, the principal object of which was, apparently, to show that the declaration of the counsel that a verdict of guilty might be rendered was unauthorized, and that there were several witnesses present whose testimony the plaintiff in error desired to introduce to show that the statements contained in the affidavit were true, and that his counsel was unwilling and declined to call the witnesses and introduce their testimony, relying upon the proposition that the affidavit was not an instrument authorized by law, and therefore perjury could not be assigned upon it. It will be seen, therefore, that after the introduction of certain evidence, further evidence was waived, and an admission made by the counsel, in the presence and hearing of the

plaintiff in error, of his guilt under the indictment, and a verdict of guilty by the jury was rendered and recorded, as it would seem, with his consent, openly given in court.    The motion for a new trial was addressed to the discretion of the court, and no error, therefore, for overruling it can be assigned.    The district court had the best opportunity of judging of the effect of the affidavits which were filed in support of the motion.    It had heard the testimony of all the witnesses on the trial.    It had observed the conduct and demeanor of the plaintiff in error during the trial.    It was, therefore, better able to judge of the truth of the statements made in the affidavits than this court, and the rule, which has been established by the supreme court of the United States applies here, that the opinion of the court upon a motion for a new trial is a matter of discretion and not error.    It is claimed by the plaintiff in error that his rights were sacrificed by the action of his counsel in the district court.    Of that the district court was a competent judge, and it is to be observed that the counsel himself, who acted for the plaintiff in error in the district court, was not heard, and his affidavit was not taken, and therefore his statement of the facts, and of the circumstances which operat~d upon him, is not before us.    He is said to have relied upon a view which he took of the law of the case which he thought conclusive, namely, that there was no statute which required an affidavit of the kind which is the subject of controversy in this case.    If that were so, then it was a misapprehension, we think, of the law which declares that certain officers of the treasury department, as well as the secretary himself, may make certain rules and regulations relating to the duties of their several offices.    There can be no doubt it was competent for a regulation of the kind in controversy here to be made by the proper officer of the treasury, namely, that before a bond should be accepted, which might authorize the delivery, under the law then in force, of stamps on credit to a manufacturer of matches, an affidavit should be made showing the responsibility of the sureties, and therefore this was an affidavit authorized by law; and if the statements contained in it were false, and known to be so by the person making them, then upon it perjury could be assigned.    The judgment and sentence of the district court will be affirmed.